# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 07-30037** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **TANYA MARIE SMITH** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, filed on April 19, 2011, by petitioner Tanya Marie Smith.  Doc. # 84.  For reasons stated below, it is recommended that the motion be **DENIED**.

## BACKGROUND

Petitioner was charged by the grand jury with four substantive counts involving weapons offenses.[1]  Indictment, Sept. 26, 2007 (Doc. # 1).  On October 1, 2008, after a three day jury trial, petitioner was convicted of conspiracy to possess firearms by convicted felons, being a felon in possession of firearms, and possessing a short-barreled shotgun not registered to her.  Mins. of Court, Oct. 1, 2008 (Doc. # 40).

The Presentence Investigation Report determined petitioner's offense level to be 29, with a Criminal History Category of III, yielding a guideline imprisonment range of 108 to 135 months.  *See* Sentencing Tr., Jan. 6, 2009 (Doc. # 68).  During the sentencing phase, both the United States Government and Petitioner raised oral objections to the Presentence Investigation Report.  *Id.*  The Government sought a recalculation of the sentencing Range pursuant to Section 2K2.1(c)(1)(B), and, in the alternative, moved for an upward deviation from the Guidelines

---

[1] The United States Government asserted forfeiture allegations against Petitioner in Counts Five and Six.

range.[2]  *Id.*  The Government's request for an upward departure was based on the fact that Petitioner's firearms violations were related to the murder of two Bastrop, Louisiana, police officers.[3]  After receiving testimony at the sentencing hearing, the District Court sustained the Government's objection, finding Petitioner's offense level to be 38, with a Criminal History of III, thus yielding an advisory guidelines sentencing range of 292 to 365 months.  *Id.*  The ruling on the Government's objection rendered both the defendant's objection and the motion for upward departure moot, because the counts for which she was convicted carried a statutory maximum of considerably less than the minimum guideline range.  On that basis, the Court sentenced Petitioner to the maximum statutory term for each offense: 60 months on Count 1, and 120 months on Counts 2 and 4, and ordered the sentences to be served consecutively.  J., Jan. 9,

---

[2] The relevant portion of Section 2K2.1(c)(1)(B) states as follows:

If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply –

\*\*\*

B. If death resulted, the most analogous offense guideline from Chapter 2, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

[3] As noted by District Judge Robert G. James at the sentencing hearing:

Smith's firearm violations came to light after a tragic incident in which her boyfriend, Dennis Clem, shot and killed two Bastrop police officers.  However, Smith is not in federal court on the basis of those crimes.  On the other hand, the Court must consider the evidence of the circumstances surrounding Smith's firearms violations, both in ruling on the objections and on the request for an upward deviation.

Doc. # 68, pp. 54:24-55:6.

Dennis Clem was shot and killed in a subsequent shootout with police.  After her federal trial, Petitioner was tried and convicted in Louisiana State Court on two counts of second degree murder, three counts of possession of a firearm by a convicted felon, possession of an unregistered firearm, possession of an unidentifiable firearm, conspiracy to possess a firearm by a convicted felon, possession of methamphetamine, and possession of marijuana, third offense.  Petitioner was sentenced to serve consecutive life sentences for the murders, and concurrent maximum sentences for the other offenses.  The Second Circuit Court of Appeal affirmed Petitioner's sentence.  *See State of Louisiana v. Tonya* [*sic*] *Smith a/k/a "Little Feather"*, No. 44-998-KA, 34 So.3d 386 (La.App. 2 Cir. 3/31/10).  On December 10, 2010, the Supreme Court denied Petitioner's application for writ of certiorari.  *State of Louisiana v. Tanya Smith a/k/a/ Little Feather*, No. 2010-KO-0980, 51 So.3d 722 (La. 12/10/10).

2009 (Doc. # 58); Am. J., Jan. 20, 2009 (Doc. # 61).  This resulted in a total 300-month sentence.  Doc. # 61.

On January 29, 2009, Petitioner filed her Notice of Appeal.  Doc. # 62.  In her appeal, Petitioner raised two issues: (1) Whether the evidence was sufficient to support her convictions on Counts 1 and 4, and (2) Whether the District Court correctly calculated her guidelines range using U.S.S.G. § 2K1.1(c)(1)(B) to reach a reasonable sentence.  *U.S. v. Tanya Marie Smith*, 359 Fed.Appx. 491 (5th Cir. 2010).  The Fifth Circuit affirmed the judgment of the District Court.  *Id.*  On May 17, 2010, the United States Supreme Court denied petitioner's writ of certiorari.  *Tanya Marie Smith v. United* States, 130 S.Ct. 3298 (2010).

The instant motion was timely filed on April 19, 2011.  Doc. # 84.  Petitioner asserts the following grounds for relief:

(1)  Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated when the proceedings were not fully recorded according to 28 U.S.C. § 753(b).

(2)  The State failed to disclose any and all of the plea agreements with three of Petitioner's co-defendants, depriving her of Sixth and Fourteenth Amendment rights to due process and a fair trial, and undermining confidence in the jury's verdict under *Kyles v. Whitley*.

(3)  Petitioner's counsel rendered ineffective assistance of counsel when he failed to assert an insanity defense and refused to allow Petitioner to plead not guilty by reason of insanity.

(4)  The District Court violated Petitioner's Fifth, Sixth and Fourteenth Amendment rights by admitting hearsay testimony at her sentencing in support of the enhancement provided in U.S.S.G. § 2K2.1(c)(1)(B).

(5)  Petitioner's sentences are excessive, thus violating her Eighth Amendment rights.

## LAW AND ANALYSIS

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted and his conviction has

been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). As a result, review under § 2255 is limited to four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255.

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*). Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*citing Shaid*, 937 F.2d at 232); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). Of course, issues raised and disposed of on direct appeal are not subject to further review under section 2255. *See Segler*, 37 F.3d at 1134.

In *United States v. Vaughn*, the United States Court of Appeals for the Fifth Circuit stated:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *U.S. v. Capua*, 656 F.2d. 1033, 1037 (5th Cir. 1981). Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.
> *United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992).

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-6, 106 S.Ct. 2639, 2649 (1986); *Bousley v.*

4

*United States*, 523 U.S. 614, 620-2, 118 S.Ct. 1604, 1610-1611 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent. *Shaid*, 937 F.2d at 232.

I. **Petitioner's Claim that Failure to Record Portions of Her Trial Violated Her Constitutional Rights**

Petitioner first argues that her Sixth and Fourteenth Amendments were violated because the proceedings were not recorded in accordance with 28 U.S.C. § 753(b). She asserts that the failure to "preserve all portions of the trial proceedings...has prejudiced [her] claims on appeal" and has likewise "hindered" the preparation of the instant motion. Doc. # 84-2, p. 2. Petitioner further argues that the "record in this case is void of the *voir dire*, jury impanelment, opening statements and closing arguments, numerous sets of jury charges, fourteen sidebar discussions held off the record, as well as...discussions between the United States Attorney, Joseph G. Jarzabek...and defense counsel, Charles L. Kincade." *Id.*

Petitioner fails to distinguish between the total failure to **record** a hearing or trial, and the failure to **transcribe** the recording for the benefit of a party on appeal. Recordation is required, but Petitioner has failed to demonstrate that any particular portion of her trial was not actually recorded. Indeed, the record and docket sheet indicate that a court reporter was present and recorded the entire trial and sentencing. In the instances where a court reporter was not present, as at the initial appearance and arraignment, the docket sheet indicates "Court Reporter: FTR Digital." Doc. Nos. 4, 9, 14, and 22.

If Petitioner wishes to have additional portions of the record transcribed, she may, of course, request transcription. However, Petitioner has failed to demonstrate that the proceedings, or any portions of them, were not recorded. She has only demonstrated that the recordings were not transcribed and included in the record on appeal, a matter totally within Petitioner's power to

request. In the absence of a specific request for transcription, and payment of the appropriate fees, there is no violation of the Court Reporter Act for failure to transcribe the recorded portion of the procedure. Petitioner has not claimed that she ever requested transcriptions of the portions she now claims are "missing" from the record; she only claims that they were never recorded to begin with, which is inaccurate.

As to unrecorded bench conferences and sidebars between Mr. Jarzabek, Mr. Kincade, and Judge James, it is difficult to imagine how failure to record these conferences prejudiced Petitioner at trial. The jury, of course, did not hear any of the conferences and therefore could not have been influenced by anything said during them.

Petitioner relies on *United States v. Gieger*, 190 F.3d 661 (5th Cir. 1999) in support of her argument. In *Gieger*, the Court found that, even though some of the 72 bench conferences should have been recorded, defendants were not prejudiced because the conferences were administrative in nature, and therefore unimportant to the record; or because there was an objection to the court's ruling following a bench conference; or because the bench conferences concerned counts on which defendants were acquitted. *Id.* at 667.

In *United States v. Selva*, 559 F.3d 1303 (5th Cir. 1977), the Fifth Circuit held that a defendant "must generally show prejudice from omissions or errors in the record before such lapses require reversal." *Gieger*, 190 F.3d at 667 (citing *Selva*, 559 F.2d at 1305). However, if on appeal, the appellant is represented by an attorney other than the one who represented her at trial, "no showing of prejudice is required." *Gieger*, 190 F.3d at 667 (citing *Selva*, 559 F.2d at 1305). All that is required is a demonstration that the missing portions are "significant and substantial." *Selva*, 559 F.2d at 1306. Here, Mr. Kincade represented Petitioner at trial and on appeal. If there were any errors during the bench conferences, Mr. Kincade was well aware of them and could have objected and required that his objection be placed in the record to preserve it for Petitioner's appeal. Because Mr. Kincade was her counsel at trial and on appeal, Petitioner

must demonstrate with some level of specificity that the unrecorded bench conferences actually prejudiced her in some way. Petitioner has failed to bring forth any such evidence here.

As to Petitioner's claim that her rights were violated because the *voir dire* was not "recorded," Petitioner again has failed to request transcripts, or a reconstruction if a recording is unavailable from which to transcribe the *voir dire* proceedings. *See United States v. Cashwell*, 950 F.2d 699 (11th Cir. 1992) (a failure to record the *voir dire* may require a reconstruction which need not be perfect, but need only be sufficient to allow a defendant to challenge the composition of the venue (*Id.* at 704)).

Finally, Petitioner claims that she was "kept heavily sedated during the trial and is unable to recall" specific portions of the trial; she claims this necessitates her examination of the "complete record as should have been afforded to her." Doc. # 84-2, p. 6. However, whether Petitioner received any type of medical treatment during trial is irrelevant to whether the proceedings were properly recorded.

Petitioner has not satisfied the requirement of providing both cause and prejudice for her failure to raise this issue on direct appeal. *Segler*, 37 F.3d at 1133. Further, she has failed to demonstrate any prejudice resulting from the failure to transcribe the named parts of the proceedings she alleges were not "recorded." Petitioner has presented no proof that any proceedings in open court were not recorded, nor has she presented any evidence that she suffered prejudice from the failure to record the bench conferences. It is therefore recommended that the instant petition be **DENIED** with regard to Petitioner's claim that the alleged failure to record portions of the proceedings violated her constitutional rights.

II. **Petitioner's Claim that the Government Suppressed Evidence Favorable to Her Defense**

Petitioner claims that the Government failed to disclose any and all plea agreements between the Government and "co-defendants," Donald Brendle, Crystal Harrell, and Michael

Coleman.  Doc. # 84-2, p. 9.  The undersigned first notes that none of the aforementioned individuals were Petitioner's "co-defendants" in the Federal court proceedings.  Petitioner was the only defendant listed in the case *sub judice*.  *See* Docket Sheet, Case No. 07-CR-30037.  Further, the undersigned is unaware of any claims brought by the Federal Government against either Harrell or Coleman.  To the extent that either Harrell or Coleman offered testimony against Petitioner at her trial in state court, that is irrelevant for purposes of the instant motion, which concerns Petitioner's federal trial.  Finally, neither Harrell nor Coleman testified at Petitioner's federal trial, which means that neither of them could have "entered into plea agreements with the United States...in return for their testimony," as claimed by Petitioner.

While the record shows that Brendle did testify at trial, Petitioner is mistaken in her claim that Brendle's cooperation with the Government was withheld from the defense.  Indeed, at Petitioner's trial, Brendle admitted that he was cooperating with the Government.  Brendle's testimony elicited that he had pled guilty "in a matter related to this case," to the offense of being a felon in possession of firearms.  Tr., Sept. 30, 2008 (Doc. # 66, p. 68:12-14.  Brendle was subjected to cross-examination, and acknowledged having three prior felony convictions.  *Id.* at p. 80:12-13.  Brendle further acknowledged that he had yet to be sentenced pending the testimony he offered at Petitioner's trial.  *Id.* at p. 81:1-5.  There was no failure of the Government to reveal the existence of Brendle's plea agreement as a basis for the jury to evaluate possible bias and the credibility of his testimony.

To the extent that Petitioner argues that the Government's alleged "withholding" of Brendle's cooperation with the Government is a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), her argument also fails.  Petitioner has failed to allege with any particularity what exculpatory evidence Brendle, Harrell, or Coleman might have had in connection with Petitioner's firearms offenses, as is required by *Brady* and its progeny.. *Id.*; *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Agurs*, 427 U.S. 97 (1976); *United States v. Bagley*,

473 U.S. 667 (1985). Again, only Brendle testified at Petitioner's trial, where her counsel had a full opportunity to cross-examine him. The Government did not call Harrell or Coleman, and both were equally available to the Petitioner at the time of her trial.

Petitioner has not demonstrated that there was any exculpatory evidence at all to be disclosed, much less that the Government knew that any of these three individuals had exculpatory evidence favorable to her that, if disclosed, would have resulted in a different outcome for the trial. Petitioner argues in the abstract, but fails to identify any favorable evidence suppressed by the Government. Petitioner alludes to the inner workings of the Aryan Circle; however, no testimony concerning the Aryan Circle, or Petitioner's involvement in it, was offered at trial. Petitioner certainly does not state how such information, if revealed to the jury, would have favorably affected the proceeding or would have undermined confidence in the jury verdict. Rather, much of Petitioner's argument involves irrelevant and immaterial evidence concerning Brendle's association with the Aryan Circle, and the relationship among the various individuals, including the deceased Dennis Clem. Such information was known to Petitioner at the time of trial, and is certainly neither exculpatory nor impeaching material suppressed by the Government. Petitioner also asserts, without offering any evidence in support, that the deceased officers had Clem and Petitioner under surveillance. Doc. # 84-2, p. 12. Indeed, Petitioner goes so far as to claim that it "is now unambiguous to say that law enforcement authorities had been looking for Clem and Smith, having been told prior to the couples['] arrival in Bastrop." Doc. # 84-2, p. 12. Petitioner is clearly incorrect in making such a claim; indeed, no evidence has been introduced that the fallen police detectives had any knowledge of the arrival of either Clem or Petitioner in the area. Mr. Brendle's name was on the motel registration card - not Clem's or Petitioner's, and there is simply no evidence to support a claim that the officers had any way of knowing that either Clem or Petitioner would be in the room.

In any case, Petitioner has failed to establish "cause" for her failure to raise this issue in

her direct appeal. Likewise, Petitioner has failed to demonstrate that the result of her Federal trial would even conceivably have been different had the jury been informed of the "information" she now brings forth. It is therefore recommended that the instant motion be **DENIED** with regard to the claim that the Government withheld exculpatory evidence during Petitioner's trial.

### III.     Petitioner's Claim that She Received Ineffective Assistance of Counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 732, 735 (5th Cir. 1992). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-7, 104 S.Ct. 2052, 2063-64 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland* at 689-690, 2065-66. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland* at 690, 2066; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1993); *see also, Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Here, Petitioner first argues that her attorney, Mr. Kincade, rendered ineffective assistance by failing to plead her "not guilty by reason of insanity." Doc. # 84-2, p. 17. Petitioner argues that such failure prevented the admission of evidence regarding her mental health, suicidal tendencies, drug detoxification, severe depression, battered woman's syndrome, and post-traumatic stress disorder. Petitioner claims that had she pleaded not guilty by reason of insanity, the admission of expert testimony concerning battered woman's syndrome would have "proven Smith did not and could have not had the requisite mental capacity, intent or knowledge to carry out the scheme in which she was convicted." *Id.* at p. 19.[4]

As an affirmative defense, insanity requires the defendant to prove that at the time she committed the criminal offense, she was suffering from a severe mental disease or defect which rendered her unable to appreciate the nature and quality of the wrongfulness of her acts. *United States v. Dixon*, 185 F.3d 393, 403-04 (5th Cir. 1999). The Fifth Circuit has held that a district

---

[4] Petitioner argues that Mr. Kincade should have argued that Petitioner was suffering from "Battered Woman's Syndrome" in defense of the "specific intent to kill as an element of murder." Doc. # 84-2, p. 21. However, Petitioner was not in federal court on charges of murder; she was in federal court on various weapons charges. Any such defenses applicable to murder charges are therefore irrelevant to her current claims of Mr. Kincade's representation of her at her federal trial.

11

court may "withhold the insanity instruction if it concludes that the relationship between a defendant's mental illness history and the criminal conduct has not been explained or examined in any meaningful way." *Id.* at 407.

Petitioner has not established "with convincing clarity" that she met the legal definition of insanity at the time she committed the offenses of possessing the various firearms with which she was charged. Rather, Petitioner indicates that the mere fact that her counsel did not recommend a plea of "not guilty by reason of insanity" demonstrates deficient performance. However, while Petitioner has presented evidence that she had a difficult childhood and continuous run-ins with the criminal justice system, such circumstances do not equate to a mental defect preventing her from appreciating the nature of her wrongful conduct. Petitioner has not presented any expert reports or evaluations to suggest that her depression or drug and alcohol dependence constitute a "mental defect" that rendered her incapable of understanding the wrongful nature of her conduct at the time she committed the offenses. Further, Petitioner has not presented evidence to show that she was unaware she was prohibited from associating with other convicted felons, such as Clem and Brendle. In sum, Petitioner has offered no evidence to show that she suffered any serious mental defects that rendered her incapable of understanding the wrongful nature of her conduct when she possessed the firearms.

To the contrary, the evidence adduced at trial portrays Petitioner as someone well aware of her actions. Petitioner joined with Clem in fleeing Texas, where Clem had shot and killed two people. Petitioner stayed with Clem over a period of time in Louisiana, even taking the firearms and target practicing on vacant land. *See* Tr., Doc. # 66, pp. 77-78. There is nothing in her actions to indicate that Petitioner did not know her conduct was wrongful. Petitioner signed her Conditions of Probation and Supervised Release, indicating that she understood she was not to possess firearms or associate with other convicted felons. J., So. Dist. of Texas, Mar. 7, 2006 (Doc. # 86-9, pp. 58-67) *see also* Presentence Investigation Report, Doc. # 86-9, pp. 16-36.

Petitioner was not convicted of fabricating a "scheme," but of possessing firearms after being convicted of a prior felony and being told expressly that she was prohibited from doing so. A plea of not guilty by reason of insanity would not have been justified by any of the evidence adduced at trial, by any of the mental health information contained in the Presentence Investigation Report, or by any factual claim in the current petition. Petitioner has failed to establish that an insanity defense was available to her, much less that her counsel provided ineffective assistance for not allowing her to plead not guilty by reason of insanity. It is therefore recommended that Petitioner's motion on this basis be **DENIED**.

IV. **Petitioner's Claims that Hearsay was Improperly Admitted at Her Sentencing Hearing and that Her Sentence Violated the Eighth Amendment**

With her two final claims, Petitioner argues that the admission of hearsay at her sentencing hearing violated her Fifth, Sixth and Fourteenth Amendment rights to the Constitution, and that her sentence is excessive and violates the Eight Amendment's prohibition of cruel and unusual punishment. The undersigned notes that the Petitioner's sentencing hearing was also a final revocation hearing on her supervised release violation, and that any hearsay evidence admitted appeared to have been used by the court in making that determination, and not in the sentencing determination. More importantly, because both of these claims were disposed of on Petitioner's direct appeal to the Fifth Circuit, they may not be raised anew in the instant motion. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994).

Accordingly,

## CONCLUSION

For the reasons stated above, it is recommended that petitioner's motion [doc. # 84] under 28 U.S.C. § 2255 be **DENIED**. Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy

13

thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of July, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE